Nancy FITZGERALD and Arthur Fitzgerald, Plaintiffs,

v.

BESAM AUTOMATED ENTRANCE SYSTEMS and Besam AB, Defendants.

No. CIV.A.02–0638–CB–C.

United States District Court, S.D. Alabama. Southern Division.

Sept. 15, 2003.

R. Edward Massey, III, Clay, Massey & Assoc., Mobile, AL, for Plaintiffs.

Dennis Patrick McKenna, Sydney R. Prince, III, Prince, McKean, McKenna & Broughton, Mobile, AL, for Defendants.

### ORDER

BUTLER, District Judge.

This matter is before the Court on a motion to remand filed by plaintiffs Nancy Fitzgerald and Arthur Fitzgerald, plaintiffs' brief in support thereof, and defendant's opposition. (Docs. 7, 8 & 10.) At issue is whether plaintiffs' limitation of damages in the *ad damnum* clause of the state court complaint to an amount less than $75,000 defeats this Court's removal jurisdiction on diversity grounds. Under the unique facts of this case, the Court finds that it does not. Therefore, for the reasons discussed more fully below, the motion to remand is due to be denied.[1]

### Factual Background

The instant action is the second of two lawsuits filed by Nancy Fitzgerald and

---

1. Plaintiffs have also filed a pleading entitled "Plaintiffs' Renewed Motion to Remand and Motion to Strike Defendant Besam's Motion for Summary Judgment." (Doc. 19.) The Court has considered this pleading and finds that it offers nothing relevant to the motion to remand. Instead, the purpose of plaintiffs' renewed motion is to point out why the Court should rule on the motion to remand before considering the motion for summary judgment. Alternatively, plaintiffs request that the Court strike the motion for summary judgment. Insofar as the motion seeks to strike

Arthur Fitzgerald arising from injuries allegedly suffered by Nancy Fitzgerald at a Wal–Mart store on July 23, 2000. When Mrs. Fitzgerald exited the Wal–Mart store in Tillman's Corner, Mobile County, Alabama, the store's automated doors closed prematurely and struck her on the left elbow.

On January 16, 2001, plaintiff filed a complaint in this Court against Wal–Mart and Besam Doors, Inc. asserting causes of action for negligence and wantonness against both defendants. A separate *ad damnum* clause followed each of the two causes of action asserting damages in the minimum amount of $250,000 against both defendants. Each cause of action also contained the following recitation of damages:

> As a proximate result of Defendants' said negligence, Plaintiff, Nancy Fitzgerald, was struck on her left arm and elbow requiring surgery to repair her arm and elbow; further, the Plaintiff was caused to spend sums of money for medical expenses and will spend such sums in the future; Plaintiff was permanently injured; Plaintiff suffered a loss of time from her employment and will suffer loss of employment in the future resulting in lost wages; and Plaintiff has suffered great pain and mental anguish.
>
> . . .
>
> Plaintiff, Arthur Fitzgerald, was caused to lose the consortium of his wife.

(*Nancy Fitzgerald, et al. v. Wal–Mart Stores, Inc., et al.*,[2] Civil Action No., 00–0042–C, Doc. 1., ¶¶ VII, VIII, XV & XVI.) The complaint invoked this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. (*Id.* ¶¶ IX & XII.)

On September 26, 2001, plaintiffs amended the complaint in *Fitzgerald I* to add Gulf State Door as a defendant. (*Fitzgerald I*, Doc. 19.) The amended complaint added four paragraphs to each cause of action set forth in the original complaint-one paragraph adopting the facts previously alleged, one paragraph setting forth plaintiffs factual allegations against Gulf State Door, one paragraph adding a claim for damages against Gulf State Door and, finally, a paragraph asserting yet another *ad damnum* clause as to each count.[3] A subsequent amendment to the complaint substituted defendant Besam Automated Entrance Systems, Inc. for Besam Doors, Inc. (*Fitzgerald I*, Doc. 29.)

On June 11, 2002, after summary judgment motions had been filed by all defendants, plaintiffs filed a motion entitled "Motion to Clarify Pleadings or in the Alternative to Amend the Complaint to Reflect the Intent of the Parties." (Doc. 56.) In effect, the motion sought to amend the complaint to add a claim under the Alabama Extended Manufacturer Liability Doctrine (AEMLD). Ultimately, Judge Cassady denied the motion as untimely,[4]

---

the motion for summary judgment, it is **denied.**

**2.** Hereinafter, the prior action, Civil Action No. 00–0042, will be referred to as *"Fitzgerald I"* or *"the prior action."* The action *sub judice* will be referred to as *"Fitzgerald II"* or *"the instant action."*

**3.** Because the plaintiffs amended the original complaint by adding to it, rather than filing a new amended complaint, the complaint as amended technically contains four *ad damnum* clauses-two in the original complaint naming Wal–Mart and Besam Doors, Inc. plus two in the amended complaint naming Wal–Mart, Besam Doors, Inc. and Gulf State Doors, Inc. Each of those four *ad damnum* clauses seeks a minimum of $250,000.

**4.** The time for filing motions to amend pleadings expired on December 31, 2001, almost six months before the motion to clarify or amend was filed. (*Fitzgerald I*, Doc. 28.)

finding that "[n]o good cause has been shown that would excuse this late attempt to add a claim which could have been presented during the time scheduled for such events." (*Fitzgerald I*, Doc. 80, pp. 1–2 n. 1.).

When plaintiffs filed their summary judgment response in *Fitzgerald I* on July 17, 2002, it became obvious that plaintiffs' only theory of liability against Besam Automated Entrance Systems was based on a design defect. Although defective design is a theory actionable under AEMLD, plaintiff argued in opposition to summary judgment that the design defect amounted to negligent installation.[5]

On July 12, 2002, while the motion to amend to add the AEMLD claim was pending, plaintiffs filed *Fitzgerald II*, the instant action, in state court. The two-page complaint alleges that the defendants, Besam Automated Entrance Systems, Inc. and Besam AB, "designed manufactured and sold an automated entrance system which was installed at the Wal-Mart Store number 866" and that the system "was in a defective condition unreasonably dangerous to Plaintiff as the ultimate user or consumer, as defined under the Alabama Extended Manufacturers Liability Doctrine" because "it contained sensors which would not sense or detect certain types or colors of fabric..." (*Fitzgerald II*, Attachment to Doc. 1, ¶ 4.) The complaint asserts the following types of damages: past and future medical expenses, past and future physical pain and mental anguish, permanent disfigurement and disability, and loss of consortium. In the prayer for relief, plaintiffs seek com-

pensatory damages in the amount of $74,500.

The Besam defendants filed a timely notice of removal invoking the Court's removal jurisdiction based on diversity pursuant to 28 U.S.C. §§ 1332 and 1441(a).[6] The notice asserts that the plaintiffs and both defendants are of diverse citizenship. The notice further alleges that the amount in controversy is met because plaintiffs claimed in *Fitzgerald I* damages in excess of $75,000 based on the same injuries.

**Discussion**

Unless Congress expressly provides otherwise, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Original jurisdiction includes diversity jurisdiction under 28 U.S.C. § 1332, which requires that plaintiffs and defendants be citizens of different states and that the amount in controversy exceed $75,000. The only issue in this case is whether the amount-in-controversy requirement has been met.

■ Because it is conferred by statute, the right of removal is strictly construed to limit federal jurisdiction. *Lane v. Champion Internat'l Corp.*, 827 F.Supp. 701, 705 (S.D.Ala.1993). A removing defendant bears the burden of establishing the existence of federal jurisdiction. *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1356 (11th Cir.1996), *overruled on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir.2000). When

---

**5.** Besam's summary judgment motion was granted in *Fitzgerald I* several months after *Fitzgerald II* was removed. In his order granting summary judgment, Judge Cassady concluded that even if such a defect existed "there is no evidence that [it] caused or con-

tributed to the injuries sustained by Mrs. Fitzgerald." (*Fitzgerald I,* Doc. 80, p. 26.)

**6.** Defendant Besam AB has appeared specially to join in the notice of removal only and to move to quash service of process.

the amount in controversy is in issue, the level of the defendant's burden of proof varies depending upon the allegations of plaintiff's state court complaint. Of course, in order to decide whether defendants have met their burden of proof, the Court must determine exactly what that burden is.

■ "The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed 'in good faith.'" *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961). Initially, the law regarding challenges to the amount in controversy developed in relation to cases originally brought in federal court. In its seminal case on the amount-in-controversy requirement, *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), the Supreme Court set forth the law as follows:

> The rule governing dismissal for want of jurisdiction in cases brought in federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls, if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

*Id.* at 288–89, 58 S.Ct. 586. In the rare instance where a defendant challenges diversity jurisdiction in a case originally filed in federal court, the burden is upon the plaintiff, as the party invoking jurisdiction, to prove "by a preponderance of the evidence that it does not appear to a legal certainty that [his] claim is really for less than the jurisdictional amount." *Opelika Nursing Home, Inc. v. Richardson*, 448 F.2d 658, 667 (5th Cir.1971). In other words, a plaintiff would satisfy his burden by proving, by a preponderance of the

evidence, that he has the possibility of recovering more than the jurisdictional amount.

■ The deference given to the amount claimed by a plaintiff in his complaint has been extended to removal cases. First, in *St. Paul*, the Supreme Court applied the legal certainty test to cases removed from state court where the state court complaint stated a sum certain in excess of the federal jurisdictional amount. The logic for this extension is straightforward-it is presumed that a plaintiff does not claim a large amount in a case filed in state court in order to confer federal jurisdiction. *Id.* "Thus, when the complaint seeks damages exceeding $75,000, a removing defendant may rely on the plaintiff's valuation of the case to establish the amount in controversy unless it appears to a legal certainty that the plaintiff cannot recover the amount claimed." *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1315 (11th Cir.2002). Consequently, when the plaintiff's state court complaint demands an amount greater than the federal jurisdictional minimum, the burden on a removing defendant is much like the burden on a plaintiff who originally files a diversity action in federal court.

In *Burns v. Windsor*, 31 F.3d 1092 (11th Cir.1994), the Eleventh Circuit was confronted with the converse of *St. Paul*—the removal of a state court action wherein the state court complaint sought recovery of a specific amount of damages *below* the jurisdictional minimum. Finding that the normal rules did not fit such an "atypical case," the appellate court concluded that the burden of proving jurisdiction should be on the removing defendant in this situation and that "the defendant's burden of proof must be a heavy one." *Id.* at 1095. The *Burns* court reasoned that deference should be given to the statement of damages set forth in a complaint signed by

counsel because an attorney "always has a duty of candor to the tribunal" and "the duty of diligently researching his client's case." *Id.* Representations regarding damages "have important legal consequences" and, therefore, raise "significant ethical implications" for counsel as an officer of the court. *Id.* Because a defendant seeking removal of a state court complaint requesting a sum certain below the jurisdictional amount is "essentially argu[ing] that opposing counsel is falsely assessing the case or is incompetently doing so[,]" the burden upon the defendant is heavy, requiring proof "to a legal certainty that the plaintiff's claim must exceed $50,000." *Id.* In other words, the removing defendant must prove that an award below the jurisdictional amount would be outside the range of permissible awards[.]" *Id.* at 1096.

Falling somewhere between *St. Paul* and *Burns* is the type of diversity removal addressed in *Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353 (11th Cir.1996), *overruled on other grounds Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir.2000), wherein plaintiffs asserted no specific amount of damages in the state court complaint. The *Tapscott* court declined to apply the legal certainty test in this situation because the underlying rationale cited in *Burns* did not apply. "In contrast to *Burns,* the present case concerns an unspecified claim for damages.... Where a plaintiff has made an unspecified demand for damages, a lower burden of proof is warranted because there is simply no estimate of damages to which a court may defer." *Id.* at 1356–57. Therefore, the court held that "where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $50,000 jurisdictional requirement." *Id.* at 1357.

■ Thus, the burden a removing defendant must meet to prove the amount in controversy is related to the amount of deference given to the state court complaint. Generally, when a sum certain is stated, whether above or below the federal jurisdictional minimum, that assertion is given great deference, in large part, because of the presumption that plaintiff's counsel has acted in good faith in assessing damages. If the sum demanded in the complaint is above the jurisdictional minimum, a defendant's burden is light because it is unlikely that a plaintiff would falsely plead an amount that might result in removal from his chosen forum. On the other hand, if the sum demanded is below the jurisdictional minimum, a defendant's burden is heavy because it is presumed that plaintiff's counsel understands the implications of his representations and "is engaging in no deception." *Burns,* at 1095. When the state court complaint is indeterminate, then an intermediate burden is placed upon the removing defendant since there is no representation by plaintiff's counsel that would be entitled to deference. *Tapscott,* at 1356–57.

■ In this case, no deference is due to plaintiff's state court complaint because the element of good faith clearly is absent. This is not a case like *Burns,* which involved nothing more than a state court complaint limiting damages to a sum certain below the jurisdictional amount. Here, the plaintiffs themselves first invoked the jurisdiction of this Court by asserting compensatory damages in excess of the jurisdictional minimum in *Fitzgerald I.* Yet, in the underlying state court complaint in the instant case, plaintiffs have contradicted their own jurisdictional allegations in *Fitzgerald I.* The amount in controversy cannot be both greater than $75,000 *and* $75,000 or less based on the same facts, injuries and damages. More-

over, plaintiffs cannot be permitted to benefit from their disingenuous assertions. To require defendants to prove to a legal certainty, or even by a preponderance of the evidence, that plaintiffs' recovery could not be less than $75,000 would be unreasonable when plaintiffs themselves have represented the amount in controversy to be far greater. Therefore, the Court will impose the most lenient burden of proof upon the removing defendants.

■ Since plaintiffs have represented in *Fitzgerald I* that the amount in controversy is $250,000 or more, defendants may rely on that assertion "unless it appears to a legal certainty that the plaintiff cannot recover [at least the minimum jurisdictional] amount." *Mitchell,* at 1315. As evidence of the amount in controversy, defendants have presented the following: Mrs. Fitzgerald's medical expenses exceed $20,000; Mrs. Fitzgerald has not reached maximum medical improvement; Mrs. Fitzgerald's physicians have recommended a third surgery; Mrs. Fitzgerald asserts that she is unable to do most of her normal daily activities. In addition, the Court notes that Mrs. Fitzgerald has claimed damages for past and future physical pain and mental anguish and damages for permanent disability in addition to her claim for medical expenses[7] and that Mr. Fitzgerald has claimed damages for loss of consortium. From these facts and the damages sought, it does not appear to a legal certainty that plaintiff cannot recover more than $75,000. Therefore, defendants have satisfied their burden of proving jurisdiction.

## Conclusion

This case involves an extremely unusual removal situation. After invoking this Court's diversity jurisdiction in a separate action claiming damages in excess of $250,000, plaintiffs filed the underlying state court complaint asserting that damages for the same injuries were no more than $74,500. Because these two contrary assertions cannot been reconciled, the Court concludes that plaintiffs' allegation regarding the amount in controversy in this action were not made in good faith. Therefore, plaintiffs' statement of damages is entitled to no deference, and defendants' burden of proving the amount in controversy is light. From the evidence presented, there is a possibility that plaintiffs could recover more than $75,000. Therefore, defendants have met their burden of proving jurisdiction.

Accordingly, it is **ORDERED** that plaintiffs' motion to remand be and hereby is **DENIED.**

---

7. In their motion to remand, plaintiffs assert that "the amount of damages pleaded does not include Plaintiffs'[sic] medical expenses because such expenses as are covered by insurance cannot be recovered. Ala.Code § 6–5–520 (1993)." (Mtn. to Remand, p. 5.) For several reasons, this statement does not rebut defendants' evidence that damages include medical expenses. First, the statement contradicts the complaint, which includes medical expenses in the list of damages. Second, whether § 6–5–520 would indeed preclude recovery of medical expenses is not clear. The answer would depend upon whether the plaintiffs are required to reimburse their insurer. *See* Ala.Code § 6–5–524 (1993). Third, the statement "such expenses as are covered by insurance cannot be recovered" is not a clear and unequivocal assertion that medical expenses were covered. Finally, even if plaintiffs had made such an assertion, they have presented no evidence to back it up, *i.e.,* no evidence that medical expenses were covered by insurance.