Norman J. CRAWFORD, Plaintiff,

v.

**AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA,**
Defendant.

Civil Action No. 97–A–970–N.

United States District Court,
M.D. Alabama,
Northern Division.

Dec. 22, 1997.

Lanny S. Vines, Birmingham, AL, Garve Ivey, Jasper, AL, Clatus K. Junkin, Fayette, Al, for Plaintiff.

Michael L. Bell, Birmingham, AL, for Defendant.

## MEMORANDUM OPINION & ORDER

ALBRITTON, District Judge.

### I. *Introduction & Facts*

This cause is before the court on a Motion to Remand, filed by the Plaintiff, Norman J. Crawford on July 2, 1997.

The Plaintiff originally filed his Complaint in the Circuit Court of Montgomery County on April 17, 1997. He brings claims on behalf of himself and a class of persons similarly situated for (1) breach of contract, (2) fraud, (3) theft by deception, and (4) quasi contract and unjust enrichment. The Plaintiff named as defendant American Bankers Insurance Company of Florida, Inc., alleging that the Defendant wrongfully force-placed insurance on the accounts of the Plaintiff and class.

Plaintiff attempts to "de-federalize" his complaint in state court, disclaiming all aspects of federal question jurisdiction and attempting to disclaim forms of recovery which may make this case appropriate for federal diversity jurisdiction. In a section entitled "Jurisdiction and Venue," Plaintiff writes:

> The amount in controversy in this action is less than $75,000.00 per member of the putative class. The plaintiff, on his own behalf and on behalf of the putative class, waives any compensatory damages which equal or exceed $75,000.00 per class member, and expressly waives on his own behalf and on behalf of the putative class any claim to punitive damages. This action is brought pursuant to the common law of Alabama. The plaintiff specifically waives any claim under any federal statute or any federal cause of action.

*Plaintiff's complaint at 3.* In addition, following the "Prayer for Relief," Plaintiff includes the following language, in a bold, all-capitals format, as a parting shot:

> **THIS ACTION IS BROUGHT PURSUANT TO THE COMMON LAW AND STATUTORY LAW OF THE STATE OF ALABAMA. NO CLAIM IS MADE UNDER ANY FEDERAL STATUTE OR FOR ANY FEDERAL CAUSE OF ACTION.**

*Plaintiff's complaint at 13.*

On June 24, 1997, a Notice of Removal was filed in this court. Removal was predicated on the court's diversity jurisdiction.[1] The Defendant asserts that because there is diversity of citizenship and that the jurisdictional amount has been satisfied, regardless of the limitation of damages in the Plaintiff's Complaint, this court has jurisdiction under 28 U.S.C. § 1332. On July 2, 1997, the Plaintiff filed a Motion to Remand, to which the Defendants responded.

---

1. Defendant has averred, in its statement of the facts, that service has not been properly made on the Defendant in state court. This issue need not be resolved by this court for the purposes of this motion.

**1410**

For the reasons discussed, the Plaintiff's Motion to Remand is due to be GRANTED.

## II. *Standard of Review*

Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1095 (1994); *Wymbs v. Republican State Executive Committee*, 719 F.2d 1072, 1076 (11th Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1600, 80 L.Ed.2d 131 (1984). They may only hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *See Kokkonen*, 511 U.S. at 377, 114 S.Ct. at 1675. The Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear. *See Burns*, 31 F.3d at 1095.

A federal district court has subject matter jurisdiction over a cause of action when citizens of different states are involved in the suit and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. Therefore, where the parties are diverse and the amount in controversy is sufficient, a defendant has a right, granted by statute, to remove an action from state court and avail itself of a federal forum.

In *Burns v. Windsor*, 31 F.3d 1092, 1095 (11th Cir.1994), the Eleventh Circuit explained that where a plaintiff limits his claims to an amount below the jurisdictional limit of the federal court, the defendant must show to a "legal certainty" that the plaintiff's claims exceed the jurisdictional amount in order to remove.[2] This burden reflects the

notion that the plaintiff has the right to choose his or her own forum, for "plaintiff is the master of his or her own claim; if plaintiff chooses to ask for less than the jurisdictional amount, only the sum actually demanded is in controversy." Charles A. Wright, Arthur R. Miller & Edward H. Cooper, 14A Federal Practice & Procedure § 3702. While this is, indeed, a heavy burden on the defendant, it is not an impossible burden. *Burns*, 31 F.3d at 1096. The defendant may remain in federal court as long as it demonstrates to a legal certainty that plaintiff's counsel has falsely represented, or simply does not appreciate, the value of his client's case. *Id.* at 1095. *See also Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1356 (11th Cir.1996) (explaining that "a defendant, to establish removal jurisdiction, must prove to a 'legal certainty' that the plaintiff would not recover less than [the jurisdictional amount] if she prevailed.").

## III. *Discussion*

Plaintiff has not contested that there is diversity between himself and the Defendant in this case. Therefore, the only question is whether the jurisdictional requirement is clearly met, despite the Plaintiff's attempts to specifically limit the amount in controversy.[3] Defendant has not challenged the remand by challenging the effect of the limitation of compensatory damages, or the effect of the disclaimer of punitive damages. Indeed, such limitations have been found to be effective and respected in this court. *Hooks v. Associates Financial Services Co., Inc.*, 966 F.Supp. 1098 (M.D.Ala.1997).[4]

The Defendants argue, rather, that the amount in controversy requirement is satis-

---

2. The *Burns* court emphasized that the court would "assume that plaintiff's counsel best knows the value of his client's case and that counsel is engaging in no deception." *Burns*, 31 F.3d at 1095.

3. The court has engaged in a bit of jabberwocky by labeling this type of complaint a "de-federalized" complaint. The court frequently sees this type of complaint in removed cases, and believes that there should be a term to appropriately describe the pleading technique.

4. In *Hooks*, this court held that, for purposes of determining the jurisdictional amount, a court

will rely on a plaintiff's limitation of damages, and disclaimer of punitive damages, on her own behalf and on behalf of the putative class that she seeks to represent. Other Middle District judges have made this same decision. *See Hall v. ITT Financial Services*, 891 F.Supp. 580, 582 (M.D.Ala.1994) (Thompson, J.) ("It may be that a plaintiff cannot make such a restriction. However, such a restriction might be a reason to deny class certification; in other words, the state court could conclude, after remand, that [the plaintiff] is not an adequate class representative. This court should not, however, force a plaintiff to seek more money than she wants"); *see also*

fied in this case, irrespective of the Plaintiff's limitations, because (1) the declaratory relief and restitution sought by the Plaintiff benefits the class as a whole and may be aggregated to meet the jurisdictional amount, and (2) prospective injunctive relief sought by the Plaintiff must be valued as a whole, or aggregated amount, and that value exceeds the jurisdictional amount. Defendant's arguments are unavailing for reasons which are stated below.

### Non-aggregation of Restitution Claims.

■ The Defendant contends that the amounts recoverable by each member of the class under Plaintiff's claim for unjust enrichment should be aggregated. The Defendant claims that this would result in an amount in controversy which meets the requirements of federal diversity jurisdiction.

The court, shortly after the briefs were filed in this case, confronted this same argument in the case of *Windsor v. Abbott Laboratories*, CV–97–A–376–E, Slip op. (M.D.Ala., October 31, 1997). There, the court held that the unjust enrichment claims of the class members "should not be aggregated for the purpose of calculating the jurisdictional amount." *Id.* at 8. The court noted that, in cases dealing with equitable recoveries, "courts have been flexible in ensuring that the defendant disgorge his illegal gain, and have not always required payment to individual injured parties;" but have sometimes ordered recovery in the form of a fund. *Id.* at

---

Parham v. Stouffer Foods Corp., 882 F.Supp. 1018 (M.D.Ala.1995) (De Ment, J.); Kirkland v. Montgomery Ward & Co., Inc., 882 F.Supp. 1020 (M.D.Ala.1995) (De Ment, J.).

Some courts have stated that a class representative "cannot unilaterally agree to restrict the amount of damages that class members might receive." Reeves v. Discover Card Services, Inc., No. CV–94–U–1450–J, slip op. at 1 (N.D.Ala. August 1, 1994). Applying the Reeves decision, another federal district court reasoned that a waiver of damages would amount to a breach of duty as a class representative, so that it was neither binding nor effective, "in view particularly of the plaintiffs' demand for punitive damages." Seale v. Nissan Motor Acceptance Corp., No. 95–1008–BH–M, 1996 WL 539899 (S.D.Ala. March 7, 1996).

---

9, quoting *Citronelle–Mobile Gathering, Inc. v. O'Leary*, 499 F.Supp. 871, 885 (S.D.Ala. 1980).

Nevertheless, this court held that fund-type recoveries were not appropriate in cases where an individual award to plaintiffs could be made. Rather, fund-type recoveries would be appropriate only where it was too difficult to divide the award, or where the institutional complexity of the defendant prevented separate awards. The court believes that Alabama law dictates that, where possible, "damages in an action for unjust enrichment should be apportioned among the individual claimants." *Windsor*, slip op. at 9.

The court arrived at this conclusion even though the amount of restitution is based on the benefit to the wrongdoer, and not on compensating the plaintiff. *Id.* at 10. Despite the theoretical construct of unjust enrichment, the award sought in *Windsor* still did not constitute a "single collective right in which the entire putative class has a common and undivided interest." *Id.* at 10, citing to *Tapscott*, 77 F.3d at 1359. Instead, "each potential member of the putative class has a potential unjust enrichment claim to recover the value of the corresponding benefit gained by the Defendants." *Windsor* at 10. Because Defendants in *Windsor* could not show that there was a particular reason to have a fund-type award, the court would default to the "general rule that each member of the class would be entitled to recover that portion of the benefit conferred upon the Defen-

---

In the instant case, the Plaintiff has explicitly disclaimed any claim for punitive damages. Plaintiff's Complaint at 3. Alabama cases have indicated that a jury may not award punitive damages unless they are requested by the plaintiff. See Collins v. Shelley, 514 So.2d 1358, 1361 (Ala.1987) (plaintiff's recovery was limited to compensatory damages where, "notwithstanding the wantonness count, plaintiffs did not state a claim for punitive damages in the ad damnum clause of their complaint"). This court, therefore, gives effect to the Plaintiff's waiver of punitive damages in deciding whether the jurisdictional amount exists. Those putative class members who disagree with the Plaintiff's limitation of damages, and waiver of punitive damages, have the ability to opt out from the class at the appropriate time.

dants that is related to the detriment suffered by the individual class member." *Id.* at 10.[5]

As in *Windsor,* there is no reason in this case to depart from that general rule of non-aggregation of unjust enrichment claims. If any amounts have wrongly been taken from the Plaintiffs by the insurance company, those amounts may be returned to the individual members of the class. There is simply no reason, because of institutional complexity or difficulty of division, that a fund-type recovery must be used in this case. Affidavits from the Defendant's representative, in fact, discussed the amount of additional premium for an individual plaintiff which would be attributed to the alleged forced-placed coverage. *Affid. of R. James O'Boyle, Dec. 5, 1997.* The unjust enrichment claims of putative class members may not be aggregated. Without aggregation, it is not clearly shown that the amount in controversy exceeds the requirement for jurisdiction of this court.

### Prospective Injunctive Relief

■ *Aggregation. Windsor* does not, however, match up with the present case in all respects. Part of this court's decision to remand in *Windsor* was based on the fact that the plaintiff there sought no sort of relief which could be aggregated for the purposes of jurisdiction. The plaintiff had disclaimed, on behalf of herself and the putative class she represented, all rights to punitive damages, which may be aggregated pursuant to the Eleventh Circuit's decision in *Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353, 1357 (11th Cir.1996). Likewise, the plaintiff in *Windsor* had disclaimed all rights to prospective injunctive relief for herself and the

class. In *Windsor,* this court did not consider the effect of any prospective injunctive relief for purposes of calculating the amount in controversy, because the plaintiffs had made a representation to the court that no such injunctive relief was being sought, and the court had accepted that representation. *Windsor,* slip op. at 12–13. In the end the court "emphasize[d]" that its decision was

> "predicated upon several representations made by Plaintiff's counsel as an officer of the court and in accordance with Rule 11 of the Federal Rules of Civil Procedure. In particular, the court relie[d] on the Plaintiff's statements that (1) 'Plaintiff does not seek punitive damages or equitable relief and will not accept more than $49,999 in aggregate damages or equitable relief and will not accept more than $49,999 in aggregate damages per plaintiff and class member,' and (2) **'Plaintiff has not sought any injunctive relief, only a classwide declaration regarding defendant's conduct.'**"

*Windsor,* slip op. at 12–13 (emphasis added). In *Windsor,* therefore, the court was not confronted with a question of prospective injunctive relief. Here, however, such classwide relief is being sought in the complaint and the Plaintiff has made no representation that such relief is not being sought.

The pertinent portion of Plaintiff's complaint may be found in their class action claim. *Plaintiff's Complaint at 11.* The section reads:

> Plaintiffs seeks [sic] declaratory and injunctive relief to enjoin and restrain defendants' continuation of their scheme of force-placing unauthorized and excess in-

---

5. Defendant in the present case was not, indeed could not have been, aware of this court's decision in *Windsor* at the time of its brief. Defendant did cite to one case in support of its position which was not discussed in *Windsor.* That case, *Earnest v. General Motors Corp.,* 923 F.Supp. 1469 (N.D.Ala.1996), does not cause this court to rethink its position in *Windsor.* Indeed, that decision does not even stand for the proposition that restitutionary relief to each plaintiff should be aggregated. Rather, the equitable relief sought there appears to have all been future relief: "an advertising campaign, comprehensive vehicle recall, and an injunction forbidding the defendants from using the allegedly defective" products. *Id.* at 1473. While *Earnest* does not stand for the proposition argued by Plaintiffs, it does, as discussed later in this opinion, stand for other important propositions.

surance on credit purchases, and defendants' [sic] suppression and concealment of the facts concerning their force-placing of insurance on credit purchases, in addition to damages for wrongs committed by the defendants as herein described.

Defendant argues that this case meets the requirements of federal jurisdiction because the value of an injunction sought by the Defendants, an injunction applying to future action, exceeds the jurisdictional limit.

Defendant's statement of the law—that some injunctions must be valued as a sum total, and their value not divided among the putative class members—is consistent with this court's decision in *Windsor*. There, this court noted that allocating an amount of equitable recovery to each plaintiff was only the "general rule," and that the general rule would be defeated where the difficulty of determining each individual's amount was too great, or where the complexity of institutions involved prevented determinations of each individual's damages. In the present case, prospective injunctive relief is being sought, specifically an injunction to stop the defendant from force-placing insurance in the future. The court finds that the value of this prospective injunctive relief cannot be divided among the members of the putative class, but must be valued as a whole.

As the Eleventh Circuit recently put it, in the case of "declaratory or injunctive relief, 'it is well established that the amount in controversy is measured by the value of the object of the litigation.'" *Ericsson Ge Mobile Comm., Inc. v. Motorola Comm. & Elec., Inc.*, 120 F.3d 216, 218 (11th Cir.1997), reh'g & en banc den. 130 F.3d 446 (11th Cir.1997)

(quoting *Hunt v. Washington State Apple Adv. Comm'n,* 432 U.S. 333, 345, 97 S.Ct. 2434, 2442, 53 L.Ed.2d 383 (1977)). Where the plaintiff is seeking to "enforce one common right held collectively by all plaintiffs, then the court would be correct in looking to the full value of the injunction." *Shelly v. Southern Bell Tel. & Tel. Co.,* 873 F.Supp. 613, 616 (M.D.Ala.1995), citing *Zahn v. International Paper Co.,* 414 U.S. 291, 294–95, 94 S.Ct. 505, 508–09, 38 L.Ed.2d 511 (1973). Although this court held in *Windsor* that unjust enrichment claims were not claims of this inseparable type, the present claim for prospective injunctive relief is inseparable. An injunction which would prevent the Defendant from engaging in a certain form of business in the future has no separable value to each member of the prospective class. Rather, it is prospective injunctive relief to enforce a single "common right," not to satisfy "individual and discrete" claims. *Shelly,* 873 F.Supp. at 616.[6] Such prospective injunctive relief must be valued as an aggregated whole.

In *Earnest v. General Motors Corp.,* 923 F.Supp. 1469 (N.D.Ala.1996), Judge Edwin Nelson of the Northern District was faced with a remand petition in a case where the Plaintiffs were seeking "an advertising campaign, comprehensive vehicle recall, and an injunction forbidding the defendants from" engaging in certain future conduct. *Earnest,* 923 F.Supp. at 1473. Judge Nelson could reach no other decision but that this was a case where the "class has a common interest in the equitable relief" and that in such cases "it is enough that their collective interest equal the jurisdictional amount." *Id.* at 1472, citing *Pinel v. Pinel,* 240 U.S. 594, 36 S.Ct.

---

**6.** *Shelly,* 873 F.Supp. at 616–617, actually dealt with the unusual situation where prospective injunctive relief could be valued as to each individual plaintiff. There, the plaintiffs were prisoners who were forced to use the prison phones for any calls that they made. The plaintiffs requested an injunction to stop the company which operated the prison phones from ending all phone calls after 15 minutes, a practice which forced prisoners to pay an additional $1.50 connection fee for each time a phone call exceeded 15 minutes. *Id.*

at 614. Even though the requested prospective injunctive relief could cost the defendant over $3.5 million dollars a year, the court valued the injunction from the point of view of each individual plaintiff. *Id.* at 616–17. No plaintiff's damages, therefore, would ever exceed the federal court's jurisdictional limit, since the injunction was only worth $1.50 per phone call. *Id.* In its decision in *Shelly,* the court recognized that it was dealing with a case where the plaintiffs were not seeking "one common right," but rather "individual and discrete claims." *Id.* at 616.

416, 60 L.Ed. 817 (1916).[7] This court agrees with that much of *Earnest* and finds it applicable to this case in light of the Eleventh Circuit decision in *Ericsson.*

■ *Valuation.* Merely because an injunction is valued as a 'whole' does not mean that this case will necessarily remain in federal court, however. The value of the injunction must still meet the jurisdictional requirement of the court. The Eleventh Circuit recently explained how this injunction is to be valued: from the viewpoint of the plaintiff. *Ericsson,* 120 F.3d at 219.

In analyzing a similar injunction in *Earnest,* Judge Nelson looked to the amount it would cost the defendants to comply with the injunction, finding that those costs exceeded the jurisdictional limit; and that therefore, the case could stay in federal court. *Earnest,* 923 F.Supp. at 1473. Looking to the costs of compliance is flawed, however, in light of the more recent decision of the Eleventh Circuit in *Ericsson.* Indeed, *Earnest* looked to two Supreme Court opinions and a Tenth Circuit opinion to support its 'costs of compliance' analysis. In *Ericsson,* however, the Eleventh Circuit states that the Supreme Court has left open the question whether an injunction should be valued from the perspective of the plaintiff or the defendant. 120 F.3d at 218. In addition, in footnote 8 of *Ericsson,* the Eleventh Circuit noted that its decision was in conflict with the Tenth Circuit, which values an injunction from the point of view of either the plaintiff or defendant. Id. at n. 8. Given that the Eleventh Circuit could find no guidance from the Supreme Court, and ruled opposite to the Tenth Circuit, this court cannot rely on *Earnest* and its 'costs of compliance' analysis as good law.

The question still remains, however: what is the value of this injunction sought here to the Plaintiff and putative class? In *Ericsson,* the injunction at issue voided a government contract received by the plaintiff's competitor, a contract which paid millions of dollars to a company which furnished a new radio system to the City of Birmingham. *Id.* at 221. Nevertheless, the value of that injunction—which did not mean that the plaintiff received the contract, only that the plaintiff would have a second shot to bid for the contract—was found to be "too speculative and immeasurable to satisfy the amount in controversy requirement." *Id.* at 221–22. The fact that the defendant, the successful bidder for the now-voided contract, lost millions of dollars of revenue was not sufficient to find that the federal jurisdictional limits were met. Rather, the injunction must be valued from the plaintiff's perspective, from the perspective of the party whose only gain was a "chance to rebid for the contract." *Id.* at 221. The value of that benefit was "too speculative and immeasurable to satisfy the amount in controversy requirement." *Id.* at 221–22.

In the present case, Defendant has asserted that the future injunction sought would stop it from doing force-placed business insurance in this state. Its representative asserts, by uncontested affidavit, that its "revenues (net written premium) from force-placed mortgage insurance in the State of Alabama" exceeded $450,000 in each of the last three years. *Affidavit of R. James O'Boyle, July 18, 1997.* In addition, Defendant asserts that if it were to be enjoined from writing such insurance in Alabama, it would "risk[ ] losing" such business throughout the United States, because the companies

7. Analogous to this decision is the Eleventh Circuit's decision to treat punitive damages as one inseparable sum for purposes of jurisdiction. In *Tapscott,* the Eleventh Circuit emphasized that the punitive damages sought by the Plaintiff were common and undivided because those damages constitute "a single collective right in which the putative class has a common and undivided interest; the failure of one plaintiff's claim will not increase the share of successful plaintiff's. [The defendant] is not concerned with the particular distribution of the punitive damages among the plaintiff's, but with the overall size of any such award." 77 F.3d at 1359.

who place such insurance prefer to deal with a nationwide insurer. *Id.* This valuation is flawed, however, and should not be used by this court. Defendant's affidavit values the injunction from the point of view of the defendant, an approach which is not allowed by the Eleventh Circuit after *Ericsson.*

Because the Eleventh Circuit decided *Ericsson* after the parties had submitted their briefs in the current case, the court requested that the parties brief that case so that the court could determine the proper "valuation of prospective injunctive relief for purposes of determining the amount in controversy." *Order Requesting Supplemental Argument, Nov. 21, 1997.* Plaintiffs have used this opportunity to argue again that the court should aggregate the amount in restitution sought for each plaintiff. As noted above, the court decided this issue in *Windsor* and is not inclined to reconsider. Plaintiff has also submitted an additional affidavit from a representative of the defendant. This affidavit discusses the possible restitution to each plaintiff—the full return of insurance premiums paid, or the divisible parts of the premium. *Affid. of R. James O'Boyle, Dec. 5, 1997.* Neither the affidavit nor the Defendant's supplemental brief, however, discuss how this court is to value the *prospective* injunctive relief sought here (from the point of view of the plaintiff).[8]

What that value is, the court cannot determine. What does it mean to the putative class of plaintiffs here that this particular insurance company would no longer be able to write force-placed insurance in Alabama? The court is inclined to answer: nothing, at least monetarily. Plaintiffs will not gain financially because the Defendant loses financially. Plaintiff's financial recovery will come, rather, from their tort and equity claims, not from the prospective injunctive relief.

Indeed, the court finds itself somewhat baffled by the prospect of valuing a future injunction in a case where the plaintiffs are a class of former consumers of the defendant. It is not the court's job to speculate what that value may be, however. It is the Defendant's job to show the court that the value of the prospective injunctive relief clearly exceeds the jurisdictional limit. This, the Defendant has not done. The court is left with no other decision than to state that the Defendant has not clearly shown that the value of the future injunction sought by the Plaintiff in its class complaint clearly exceeds the jurisdictional requirement of this court. Remand is to be granted.

## IV. *Conclusion*

Based on the foregoing analysis, the court finds that the Defendant has not established, to a legal certainty, that the Plaintiff's claims exceed $75,000, the minimum amount in controversy for a case predicated on the court's diversity jurisdiction. Defendant is not allowed to aggregate the amounts sought in restitution for each individual plaintiff, unless there is some special reason for a fund-type recovery. Therefore, those amounts will not exceed the jurisdictional limit. In addition, although Defendant may value prospective injunctive relief as a whole, such injunctions must be valued from the point of view of the Plaintiff. Defendant has not shown to a legal certainty that the value of the prospective injunctive relief is greater than the jurisdictional limit.

Accordingly, the court finds that the Plaintiff's Motion to Remand is due to be and is hereby GRANTED and it is the ORDER of the court that this case be REMANDED to the Circuit Court of Montgomery County.

---

8. The case submitted by Plaintiff, *Edge v. Blockbuster Video, Inc.,* 1997 U.S.Dist. LEXIS 1846 (N.D.Ala., Sept. 24, 1997), decides opposite to this court whether restitution should be aggregated for purposes of determining the amount in controversy. *Edge* does not, however, shed any light on the issue of valuing prospective injunctive relief from the point of view of the plaintiff. Indeed, *Edge,* even though it was written after *Ericsson,* does not discuss that case and appears to value prospective injunctions in the wrong manner, i.e., from the point of view of the defendant. *Edge,* 1997 LEXIS 1846 at * 8.

**1416**

The Clerk is DIRECTED to take the necessary steps to effect the remand.[9]

9. Plaintiffs filed a "Motion for Stay of Enforcement of Federal Rules" on July 2. That motion is denied as moot. All other motions which have been filed by the parties—motions for class certification, and a motion to compel arbitration and to stay the action—will not be ruled upon because the court remanded the action.